IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LEONARD CLERKLEY | § | |
| | § | CIVIL ACTION NO. 6:06cv356 |
| OFFICER ROBERTS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Leonard Clerkley, an Texas prison inmate confined in the Billy Moore Unit, a private confinement facility, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on March 8, 2007, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Clerkley says that he worked in the barbershop at the Moore Unit. At some time before March 1, 2006, Clerkley says that Officer Roberts, whom he identifies as "a counselor in charge of the barbershop," brought "an ultraviolet light box" into the barbershop. He explains that this was a device used to sterilize the barber tools such as razors and combs. However, the device was apparently broken; Clerkley says that it could not be closed, and it did not have a lid. He testified at the hearing that it remained in the barbershop for about three days before Roberts removed it.

On March 1, 2006, Clerkley says that he went to the infirmary with a complaint that his eyes had been burned, Other inmates also had this same complaint. The first nurse whom he saw initially thought that Clerkley's injury was a "flash burn," such as are suffered by welders. The nurse then admitted that he did not know what the injury was, and gave him treatment for a flash burn.

1

Later, however, Clerkley says that he was seen by a physician's assistant, Finck, who told him that his eyes were not burned at all, but that he had a virus or allergy. He notes that Finck did not treat him for a viral ailment either.

Clerkley testified that he sued Roberts because she had put the device in the barbershop. He sued Captain Bratton because no incident report was written, and Bratton was supposed to be in charge of this. He acknowledged that Bratton had taken him to the infirmary when he wanted to go.

Next, Clerkley said, he sued Nurse McGuire for incompetence. He said that McGuire did not know what she was doing, and kept giving him different stories about what was wrong with him, and finally gave him medications but later said that these were the wrong ones.

Another nurse, named Roueshard, was also being sued for incompetence, Clerkley said, He stated that Roueshard told him something, and then talked to the physician's assistant and changed her story. After Clerkley filed a grievance, Roueshard told him that it was a virus.

Similarly, Clerkley said, the P.A., Finck, told him that it was a virus, but gave him no treatment for a virus. He said that Finck told him that they would have to order medications and that by the time they received the medicine, Clerkley would be over it,.

Clerkley testified that Roberts was told that the light was broken, but she put it in the barbershop anyway. He said that everything in the barbershop was supposed to be safety-inspected, but the light was not.

Nurse Kathy Grey, a prison nurse who was present at the <u>Spears</u> hearing, testified under oath concerning the contents of Clerkley's medical records. She said that on March 4, 2006, Clerkley was seen with eye complaints, but he denied any injuries to the eye at that time. On March 8, 2006, Clerkley saw Finck, who said that there were no burns and that Clerkley had a virus, but no anti-viral treatments were appropriate. A month later, on April 7, 2006, Grey said that Clerkley's eyes showed no watering, weeping, or swelling.

The Court has received and reviewed copies of Clerkley's prison records, including his grievance records and medical records. On March 9, 2006, Clerkley filed a Step One grievance complaining of the medical care which he had received. This grievance said that on March 1, 2006, he woke up with his eye swollen and red, and went to see Nurse McGuire. However, McGuire did not know what was wrong with him, although he thought it may have been allergies. McGuire gave him some eye wash.

On March 4, Clerkley was called out to see Nurse Roueshard. She looked at his eye and said that it did not look like allergies to her. She examined his eyes with a light, but it hurt. The nurse told him that his cornea was burnt. On March 6, Clerkley's grievance says that he was called out to see Finck, and she said that his eyes were not burnt and that he had a viral infection that did not come from the radiation of the ultraviolet light. The response to this grievance was that P.A. Finck's finding that he had a viral infection was consistent with her assessment, and that Clerkley's corneas were not burnt. The response also says that Plaintiff was seen by Dr. Gray and referred for an optometry appointment, but that Plaintiff signed a refusal.

In his Step One grievance, Clerkley says as follows:

> On 2/28/06 Ms. Roberts brought the light in to the barbershop for the barber have to work with. Ms. Roberts ask about the light, she ask if it work, and I Leonard Clerkley told her that it did not, and she picked it up and left. 3/1/06 I woke up and went to work - I could not open my eye and was admitted to the infirmary by Captain Bratton.

It appears from this grievance, which was filled out on March 9, less than two weeks after the incident occurred, that Clerkley was exposed to the light for only one day, during the time that Roberts had it in the barbershop on February 28, 2006.

Clerkley's medical records show that on March 2, 2006, he filed a sick call request asking about his eyes. On March 4, he saw a nurse named Marcy Richard with a complaint that his eyes were red and watering. He denied getting anything in his eyes or being injured there, and no foreign matter was seen in his eyes. The nurse noted that other inmates who had been in the barber shop had the same complaint. She referred him to see a provider.

3

On March 8, Clerkley saw physician's assistant Susan Finck. She quoted Clerkley as saying that he had been a welder for a long time and he knew an eye burn when he saw one, and that even if it were a virus, there was some medicine he should be getting, but was not. Finck noted that Clerkley was insistent that he had been burned by the UV sterilization lamp in the barber shop, but there were no cutaneous burns, his sclerae (i.e. the white part of the eye) were clear, and there was no redness or drainage. She told him that there are no anti-viral medications which are appropriate for coryza symptoms and encouraged him to stop rubbing his eyes, wash his hands frequently, and use cold compresses.[1] Finck concluded that Clerkley had a mild viral infection of the eyes and that no further treatment was indicated.

On April 7, 2006, Clerkley saw Dr. James Gray, asking for a referral to the optometry department. He had previously had a referral, but refused transport, apparently because of a misunderstanding. Clerkley said that he needed glasses, and also that the UV light in the barbershop had affected him. An examination showed no watering or weeping or redness. The doctor referred him to the optometry department and gave him some ointment for his eyes.

## Legal Standards and Analysis

Clerkley raises two general complaints: he sues Roberts for bringing the light into the barbershop despite the fact that it was broken, and he sues the medical personnel for what he described as "incompetence." In a subsidiary allegation, he says that no incident report was written, suing Captain Bratton for this omission.

The claim against Roberts is in effect for deliberate indifference. The Fifth Circuit has stated that prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

---

[1] Coryza is the virus usually known as the "common cold."

In <u>Davidson</u>, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. <u>Davidson</u>, 474 U.S. at 347-48.

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

More recently, the Supreme Court explained that

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).

In <u>Bowie v. Procunier</u>, 808 F.2d 1142 (5th Cir. 1987), inmate Elisha Bowie brought suit because prison officials did not provide adequate safety equipment to protect him at work, with the result that he lost an eye while chopping wood. The lawsuit was dismissed for failure to state a claim, and the Fifth Circuit affirmed, saying that the Due Process Clause is not implicated by a negligent act of an individual causing unintended loss of or injury to life, liberty, or property. <u>Bowie</u>, 808 F.2d at 1143, *citing* <u>Daniels v. Williams</u>, 106 S.Ct. 662, 663 (1986).

The present case is essentially similar to <u>Bowie</u>. Clerkley complains that Roberts failed to ensure that the ultraviolet light had adequate safety measures and was working properly, with the result that he says that he was injured. He does not state in his complaint or testimony, nor does he

say in his grievance, that Roberts intentionally sought to harm the inmates in the barber shop by bringing in a broken sterilization lamp; rather, his pleadings and testimony indicate that Roberts was simply careless or negligent.  As the Supreme Court has explained, carelessness and negligence will not support allegations under Section 1983.  Clerkley's claim against Roberts is without merit.

Clerkley also sues the medical personnel, including two nurses and the physician's assistant.  He alleges first that the nurses, McGuire and Roueshard (by whom he possibly means Marcy Richard, who saw him on March 4) were incompetent and did not know what they were doing.

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not.  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989).  However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation.  Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim.  Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991).  Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action.  Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993).  The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs.  Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs.  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In <u>Domino v. TDCJ-ID</u>, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Id.</u> Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 838 (1994).

<u>Domino</u>, 239 F.3d at 756; *see also* <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999).

Clerkley does not allege, much less show, that either of the nurses whom he saw refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct. Instead, he says that the nurses kept changing their minds and did not know what the problem was. Even if negligent or mistaken, however, this does not rise to the level of deliberate indifference such as is required to sustain a claim under Section 1983. <u>Graves</u>, 1 F.3d at 320. Clerkley has failed to set out a claim against nurses McGuire or Roueshard.

Clerkley also sues Susan Finck, the physician's assistant, saying that Finck told him that it was a virus, not a burn, but then refused to give him any treatment for the supposed virus. The medical records show that Finck found no signs of a burn and determined that he had a mild viral infection for which no treatment was indicated. Clerkley has not shown that Finck was deliberately indifferent to a serious medical need; even if she should have perceived such a need but did not, this does not amount to deliberate indifference. <u>Domino</u>, 239 F.3d at 756.

Finally, Clerkley sued Captain Bratton, saying that no incident report was written and that Bratton, as the officer in charge, was responsible for this. There is no constitutional right to have an incident report written, nor to have an incident or grievance investigated to the inmate's

satisfaction. *See* Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). To the extent that Clerkley sues Bratton because of the captain's position of authority, this claim lacks merit because Clerkley has not shown any basis for supervisory liability on the part of Captain Bratton; he has not shown any personal involvement by Bratton in a constitutional deprivation, a causal connection between wrongful conduct by Bratton and a constitutional deprivation, or that Bratton implemented a policy so deficient that the policy itself was a repudiation of constitutional rights and was the moving force behind a constitutional deprivation. . Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). His claims are without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Clerkley's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **21** day of **March, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE